IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRACY JEAN BELL,<br><br>Defendant. | CR 22–23–M–DLC<br><br><br><br>ORDER |

On August 11, 2025, Defendant Tracy Jean Bell filed a pro se motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 125.) The Court ordered the Federal Defenders of Montana to promptly locate conflict-free counsel to represent Bell. (Doc. 127.) Bell's projected release date is June 7, 2029. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed January 26, 2026). On November 28, 2025, appointed counsel filed a renewed motion. (Doc. 133.) The government opposes the motion. (Doc. 135.)

## ANALYSIS

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) takes into consideration the sentencing factors set forth in 18 U.S.C. § 3553(a); (2) is warranted by "extraordinary and

1

compelling reasons," or the defendant is at least 70 years old and has served at least 30 years in prison; and (3) is consistent with the applicable policy statements of the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Sentencing Commission's relevant policy statement adds that the Court may not reduce a term of imprisonment unless "the defendant is not a danger to the safety of any other person or to the community." U.S. Sent'g Guidelines Manual § 1B1.13(a)(2) (U.S. Sent'g Comm'n 2025).

Bell argues that his unmet medical needs—including Parkinson's Disease, high blood pressure, edema, and cardiac disease requiring a pacemaker—amount to extraordinary and compelling circumstances that warrant early release. (Doc. 133 at 6.) For the reasons discussed below, the Court denies the motion.

I.   **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). On May 19, 2025, Warden S. Salmonson denied Bell's administrative request for a reduction in sentence pursuant to the First Step Act. (Doc. 125-1 at 10.) As such, it appears as though

Bell has exhausted his administrative remedies.

## II. Extraordinary and Compelling Reasons

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(B), (b)(1)(C) (U.S. Sent'g Comm'n 2025). Additionally, an extraordinary and compelling reason exists where the defendant presents the following circumstances—

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> (iii) such risk cannot be adequately mitigated in a timely manner.

*Id.* § 1B.13(b)(1)(D).

The defendant may also "present any other circumstance or combination of

circumstances that, when considered by themselves or together with any of the" examples provided by the Sentencing Commission, "are similar in gravity to" the examples provided. *Id.* § 1B1.13(b)(5). However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* § 1B1.13(d).

Bell argues that under USSG § 1B1.13(b)(1) he qualifies for compassionate relief because he has been diagnosed with a serious heart condition that "will not resolve without the placement of a pacemaker." (Doc. 133 at 12.) Further, Bell explains that his advancing Parkinson's disease is not well controlled while in BOP custody. (*Id.* at 12–13.) Bell struggles to feed himself due to his shaky hands, and his mobility problems require aids for incontinence "because his slow and limited mobility prevents him from arriving to the bathroom in time." (*Id.* at 13 (citing Doc. 134-2 at 1).)

In response, the Government "does not dispute that Bell suffers from Parkinson[']s disease and other health issues," but contends that "Bell has not demonstrated that any of his medical conditions, standing alone or taken together, substantially diminish his ability to provide self-care in prison." (Doc. 135 at 7.)

The Court agrees with the Government and finds that Bell has not demonstrated extraordinary and compelling circumstances that warrant an early release. Bell receives regular medical treatment, as evidenced by his extensive BOP medical records. A clinical encounter record from July 30, 2025, indicates

4

that a cardiologist recommended Bell receive a pacemaker. (Doc. 138-1 at 544.) At the time of Bell's motion, he had not yet undergone pacemaker surgery. (*See* Doc. 133 at 16.) However, only six months have passed since the pacemaker was originally recommended. As the Government points out, surgeries are delayed for many reasons, and the Court is not convinced that the delay here is unreasonable. Bell's most recent medical record, dated November 17, 2025, states that Bell's blood pressure "is well controlled below his goal of 140/90." (Doc. 138-1 at 503.) While Bell undoubtedly has serious progressive medical problems that require ongoing medical treatment, the Court finds that those conditions are being adequately treated by the BOP. Bell's medical issues do not "substantially diminish [Bell's ability] to provide self-care within the environment of a correction facility." *See* § 1B1.13(b)(1)

The Court must address the federal sentencing objectives set forth in 18 U.S.C. § 3553(a), which include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted

sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

On November 17, 2023, Bell was sentenced in this matter to a custodial sentence of 96 months to be followed by 4 years of supervised release after pleading guilty to one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846. (Doc. 120.)

The offense conduct in this case involved Bell distributing methamphetamine in Montana communities. (Doc. 122 at 6–12.) In total, Bell was accountable for conspiracy to distribute 571 grams of methamphetamine and 98 grams of heroin. (*Id.* at 12.)

Bell's total criminal history score was three at the time of sentencing, placing him in criminal history category II. (*Id.* at 17.) His total offense level was 31, which included one two-level downward adjustment pursuant to § 2D1.1(b)(18), and one two-level upward adjustment for obstruction of justice. (*Id.* at 12–13.) His offense level also included one two-level downward adjustment and one one-level downward adjustment for acceptance of responsibility. (*Id.* at 13.) Accordingly, Bell's guideline imprisonment range was 121 to 151 months. (*Id.* at 24.) The Court varied downward based in part on Bell's physical condition and age, finding that a sentence of 96 months was consistent with the 3553(a) factors. (Doc. 121 at 3–4.) Therefore, the Court has already considered the 18 U.S.C. §

6

3553(a) factors in considering what is a sufficient but not greater than necessary sentence for Bell.

The Court finds Bell's criminal history, which includes several convictions for possession and distribution of drugs, very concerning. The Court believes Bell still presents a risk of danger to the community. Completion of the sentence imposed will best serve the aims of sentencing under § 3553(a), especially the need to promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public.

## Conclusion

Bell has not demonstrated an extraordinary and compelling reason to warrant a reduction of his custodial sentence. The § 3553(a) factors support denial of Bell's request.

Accordingly, IT IS ORDERED that Bell's motion to reduce sentence (Doc. 133) is DENIED.

DATED this 26th day of January, 2024.

_____
Dana L. Christensen, District Judge
United States District Court